**KOYO SEIKO COMPANY, LTD. and Koyo Corporation of U.S.A., Plaintiffs,**

v.

**UNITED STATES and the United States Department of Commerce, Defendants,**

**The Torrington Company and Federal–Mogul Corporation, Defendant–Intervenors.**

Court No. 91–08–00591.

United States Court of International Trade.

June 30, 1992.

Amended Judgment Aug. 31, 1992.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Neil R. Ellis and Niall P. Meagher, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis, Asst. Director, and A. David Lafer, Sr. Trial Atty.), of counsel: Stephen J. Claeys, Craig Giesze, D. Michael Kaye and Dean Pinkert, Atty.-Advisors, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendants.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Geert De Prest, Washington, D.C., for The Torrington Co., defendant-intervenor.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Larry Hampel and Joseph A. Perna, V, Washington, D.C., for Federal–Mogul Corp., defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Koyo Seiko Company, Ltd. and Koyo Corporation of U.S.A. ("Koyo"), move pursuant to Rule 56.1 for judgment on the agency record. This administrative review covers the period from November 9, 1988 through April 30, 1990. The preliminary results of this review were published in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Antidumping Duty Administrative Reviews*, 56 Fed. Reg. 11,186 (1991). The Department of Commerce, International Trade Administration ("Commerce" or "ITA"), preliminarily determined antidumping margins for Koyo to be .49% for ball bearings and .02% for cylindrical roller bearings. On July 11, 1991, the final results were published in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Antidumping Duty Administrative Reviews*, 56 Fed. Reg. 31,754 (1991) ("Final Results"). At this time, Commerce established dumping margins for Koyo of 9.82% for ball bearings and 1.45% for cylindrical roller bearings.

Koyo contests several actions undertaken by Commerce in calculating the final dumping margins. Specifically, Koyo objects to (1) Commerce's methodology used to calculate assessment rates; (2) Commerce's decision to classify Koyo's home market post-sale price adjustments as indirect selling expenses; (3) Commerce's exclusion of home market sales to related parties in its calculation of foreign market value; (4) Commerce's use of home market samples in calculating foreign market value; (5) Commerce's decision to subtract Koyo's U.S. direct selling expenses from U.S. price, rather than treating them as "circumstance of sale" adjustments and deducting them from foreign market value; and (6) Commerce's comparison of sales across different levels of trade.

## DISCUSSION

■ Pursuant to the Tariff Act of 1930, in reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpre-

tation of the record." *The Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

1. *Assessment Rates*

■ Koyo claims that Commerce's establishment of assessment rates was contrary to law and unsupported by substantial evidence. In its investigation, Commerce employed separate methodologies for exporter sales price and purchase price transactions in order to arrive at appropriate assessment rates.

For purchase price sales, Commerce divided the total potential uncollected dumping duties for each importer by the total number of units sold to that importer. They did not divide by the number of units entered because they simply did not have this information. They assessed the resulting unit dollar amount against each unit of merchandise in each of that importer's entries under the relevant order during the review period.

For exporter's sales price, Commerce divided the total potential uncollected dumping duties by the total entered value of those reviewed sales for each importer.

Koyo claims that the total potential uncollected dumping duties represent the difference between foreign market value and total U.S. price for the entries under review and that nothing in the antidumping law grants Commerce the latitude to assess duties on the basis of the ratio of sales data to the entered number of units. They further claim that the only lawful ratio by which to establish assessment rates is "one in which the denominator is also based on sales data." *Motion of Plaintiffs Koyo Seiko Company, Ltd. and Koyo Corporation of U.S.A. for Judgment on the Agency Record,* at 15–16.

Koyo, however, offers no support for this conclusion. The only provision cited by Koyo which refers to the actual assessment of antidumping duties is 19 U.S.C. § 1675(a)(1)(B) (1988 & 1992 Supp.), which provides that Commerce shall "review, and determine (in accordance with paragraph (2), the amount of any antidumping duty, . . ." Paragraph two further states that the amount by which foreign market value exceeds the U.S. price "shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination. . . ." 19 U.S.C. § 1675(a)(2) (1988 & 1992 Supp.).

Commerce did in fact calculate the dumping margins as the difference between foreign market value and the U.S. price, which was therefore the basis for the assessment of dumping duties. The entered value was used by Commerce only to allocate to each entry a portion of the antidumping duties due.

■ It is well-established that Commerce is granted tremendous deference in selecting the appropriate methodology. *ICC Indus., Inc. v. United States*, 812 F.2d 694, 699 (Fed.Cir.1987); *Consumer Prods. Div., SCM Corp. v. Silver Reed America, Inc.*, 753 F.2d 1033, 1039 (Fed.Cir.1985). As long as Commerce's "decision is reasonable, then Commerce has acted within its authority even if another alternative is more reasonable." *See Koyo Seiko Co. v. United States*, 16 CIT ——, ——, 796 F.Supp. 517, 523 (1992); *see also Zenith Radio Corp. v. United States*, 9 CIT 110, 113 and n. 9, 606 F.Supp. 695, 699 and n. 9 (1985), *aff'd,* 783 F.2d 184 (Fed.Cir.1986).

In this case Commerce's methodology is a reasonable means of achieving the end result and, therefore, Commerce's actions are justified and in accordance with law.

2. *Post–Sale Price Adjustments*

■ In the final results, Koyo had two post-sale price adjustments to correct invoicing errors and retroactive price changes. First, Koyo argues that Commerce improperly classified these adjustments as "circumstance of sale" adjustments. Koyo claims that circumstance of sale adjustments are expenses that arise exclusively from preparing merchandise for sale and from selling activities themselves. Koyo cites *Smith–Corona Group v. United States*, 713 F.2d 1568, 1575 (Fed. Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984), for the

premise that circumstance of sale adjustments need only have a reasonably direct relationship to the sales under consideration. *Id.* at 1580.

That same case recognized Commerce's broad authority to define "circumstance of sale." The Court of Appeals stated that:

> The statute does not expressly limit the exercise of [the Secretary's] authority to determine adjustments, nor does it include precise standards or guidelines to govern the exercise of that authority. Additionally, the statute does not define the term "circumstance of sale" nor does it prescribe any method for determining allowances. Congress has deferred to [the Secretary's] expertise in this matter.

*Smith–Corona,* 713 F.2d at 1575.

Thus, Commerce's decision to treat these adjustments as circumstances of sale was within its discretion and reasonable.

■ Secondly, Koyo claims that even if Commerce treats these adjustments as circumstances of sale, Commerce's treatment of Koyo's home market post-sale price adjustments as indirect expenses is contrary to law and unsupported by substantial evidence in the administrative record. Koyo adds that the adjustments should be characterized as direct selling expenses. Commerce claims that they are indirect expenses because Koyo did not allocate these adjustments on a product-specific basis.

Koyo again relies on *Smith–Corona,* 713 F.2d 1568, because the rebates involved in that case were considered direct selling expenses even though these were allocated on a non-product specific basis. The case at hand, however, can be differentiated in that the rebates in *Smith–Corona* were granted as a straight percentage of sales, regardless of the models sold. They did not vary from sale to sale and product to product as did the post-sale price adjustments at issue in this case. In *Smith–Corona* the rebates could be specifically correlated with direct merchandise using verified cost and sales information. This cannot be done in the case at hand and thus, Commerce was justified in treating the adjustments as indirect expenses.

### 3. *Home Market Sample Sales*

Thirdly, Koyo claims that Commerce should have excluded Koyo's home market sample sales from its calculation of foreign market value ("FMV"). Koyo claims that these sample sales should have been excluded because only merchandise that is sold "in the usual commercial quantities" *and* in the "ordinary course of trade" to one or more purchasers may be used to determine FMV. 19 U.S.C. § 1677b (1988 & Supp.1992); 19 C.F.R. § 353.46(a) (1991).

■ Koyo, however, has the burden of proving that its home market sample sales were not sold in the ordinary commercial quantities and in the ordinary course of trade and it has not done so in this case. Moreover, the administrative record in this case is lacking substantial evidence to prove otherwise. Thus, Commerce's decision to include these sample sales in its calculations of FMV was reasonable and in accordance with law.

### 4. *Arm's Length Sales*

Koyo additionally claims that Commerce erred by not including sales to related parties when calculating FMV despite a showing by Koyo that these sales were made at arm's length.

■ Generally, if Commerce determines that prices are at arm's length, it accepts the prices to related parties and includes them in its calculation of FMV. *Final Determination of Sales at Less Than Fair Value; Brass Sheet and Strip From Sweden,* 52 Fed.Reg. 819, 820 (1987); *Frozen Concentrated Orange Juice From Brazil; Final Determination of Sales at Less Than Fair Value,* 52 Fed.Reg. 8,324, 8,328 (1987). These will be included, however, "only if [Commerce is] satisfied that the price is comparable to the price at which the producer or reseller sold such or similar merchandise to a person not related to the seller." 19 C.F.R. § 353.45(a).

■ Koyo has the burden of proving that the sales to related parties were at arm's length. The information provided by Koyo showed that some related party sales

were made at prices which were higher than prices to unrelated customers, while others were made at lower prices. As Commerce indicated, "[t]he fact that some related party sales were made at arm's length is not an adequate basis to conclude that such sales were generally made at arm's length." *Final Results*, 56 Fed.Reg. at 31,746. Therefore, since Koyo has not satisfied the burden of proof, Commerce properly excluded Koyo's sales to its related parties from calculation of FMV.

### 5. *Direct Selling Expenses*

Additionally, Koyo claims that Commerce's deduction of direct selling expenses from the exporter's sales price was contrary to law. They claim that Commerce should have added these direct selling expenses to FMV instead of deducting them from the exporter's sales price.

█ Commerce claims that Koyo is precluded from raising this argument *de novo* since they did not bring it up at the administrative level. It is well established that a "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed.Cir.1990).

█ In this case, however, based on precedent, plaintiffs knew Commerce's position on this issue and deemed it futile for Koyo to raise this issue below. As a general rule, courts may "refuse to require administrative exhaustion when resort to the administrative remedy would be futile...." *See Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1575 (Fed.Cir.1990) (quoting *Bendure v. United States*, 213 Ct.Cl. 633, 554 F.2d 427, 431 (1977)); *see also Techsnabexport, Ltd. v. United States*, 16 CIT ——, ——, 795 F.Supp. 428, 434–35 (1992).

█ Thus, we turn to this issue on the merits. According to 19 U.S.C. § 1677a(e) (1988) "the exporter's sale price shall also be adjusted by being reduced by the amount, if any, of ...; (2) expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise...."

The Court of Appeals, however, has interpreted section 1677a(e) to refer to indirect rather than direct selling expenses. *Consumer Prods. Div.*, 753 F.2d at 1036–38.

This court has consistently held that "direct selling expenses are properly characterized as differences in circumstances of sale giving rise to an adjustment of FMV." *NTN Bearing Corp. of America v. United States*, 14 CIT ——, ——, 747 F.Supp. 726, 739 (1990); *Consumer Prods. Div.*, 753 F.2d 1033; *The Timken Co. v. United States*, 11 CIT 786, 673 F.Supp. 495 (1987). In *NTN Bearing Corp.*, 14 CIT ——, 747 F.Supp. 726, the court refused to recognize Commerce's argument that direct selling expenses should be deducted from the exporter's sales price and remanded the case to Commerce to recalculate dumping margins to reflect an adjustment of foreign market value for direct selling expenses. This Court is of the same opinion and remands this case to Commerce to recalculate dumping margins to reflect an adjustment of FMV for direct selling expenses.

### 6. *Sales Across Different Levels of Trade*

█ Finally, Koyo claims that Commerce's comparison of sales across different levels of trade was contrary to law and unsupported by substantial evidence.

In its Final Results, the ITA stated that we first sought contemporaneous sales of identical merchandise at the same level of trade in the home market as that of the U.S. sale. If we were unable to find a match, we then looked for contemporaneous sales of identical merchandise at the next level of trade.... If we were unable to find identical matches at the next level of trade, we then sought contemporaneous home market sales of the

same family as the U.S. bearing at the same level of trade. If unsuccessful, we then sought contemporaneous home market sales of the same family at the next level of trade before using [constructed value] as the basis for FMV.

*Final Results*, 56 Fed.Reg. at 31,755–56.

On several occasions this Court has affirmed Commerce's selection of most similar merchandise sold in the home market when alternative levels were unavailable. *The Timken Co. v. United States*, 10 CIT 86, 630 F.Supp. 1327 (1986); *NTN Bearing Corp.*, 14 CIT at ——, 747 F.Supp. at 736. Likewise in this case, since alternate levels were unavailable, Commerce's selection of similar merchandise was reasonable and in accordance with law.

## CONCLUSION

In accordance with the foregoing opinion, this case is remanded to the Department of Commerce, International Trade Administration, to recalculate dumping margins pursuant to the instructions set forth in this opinion to reflect an adjustment of the foreign market value for direct selling expenses. Commerce's determination is affirmed in all other respects. Commerce shall report the results of the remand determination to this Court within forty-five (45) days of the date this opinion is entered.