The TORRINGTON COMPANY, Plaintiff,

Federal–Mogul Corporation, Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc. and SKF France, S.A.; Aerospatiale Division Helicopteres and Aerospatiale Helicopter Corporation, Defendant–Intervenors.

Court No. 91–08–00562.

United States Court of International Trade.

Aug. 26, 1993.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, Margaret E.O. Edozien, William A. Fennell, Wesley K. Caine, Myron A. Brilliant, Robert A. Weaver, Amy S. Dwyer, David Scott Nance and Patrick J. McDonough, Washington, DC, for plaintiff.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, Washington, DC, for plaintiff-intervenor Federal–Mogul Corp.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan; of counsel: John D. McInerney, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert, Stephen J. Claeys and D. Michael Kaye, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Thomas J. Trendl and Juliana M. Cofrancesco, Washington, DC, for defendant-intervenors SKF USA Inc. and SKF France, S.A.

Rogers & Wells, William Silverman and Ryan Trainer, Washington, DC, for defendant-intervenor Aerospatiale Div. Helicopteres and Aerospatiale Helicopter Corp.

### *OPINION*

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from France. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Final Results of Antidumping Duty Administrative Reviews* ("*Final Results*"), 56 Fed.Reg. 31,748 (1991).

Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review* ("*Issues Appendix*"), 56 Fed.Reg. 31,692 (1991).

### *Background*

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings, cylindrical roller bearings, spherical plain bearings and parts thereof from France. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews*, 55 Fed.Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Antidumping Duty Administrative Reviews*, 56 Fed.Reg. 11,178 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results*, 56 Fed.Reg. 31,748.

Torrington moves pursuant to Rule 56.1 of the Rules of this Court for summary judgment on the agency record alleging that the following actions by the ITA were unsupported by substantial evidence on the administrative record and not in accordance with law: the ITA's (1) use of a methodology for adjusting United States price ("USP") and Foreign Market Value ("FMV") for France's value added tax ("VAT") that granted a circumstance of sale ("COS") adjustment to FMV to achieve tax neutrality; (2) method of calculating cash deposit rates for estimated duties; (3) in regard to exporter's sales price ("ESP") transactions, allowance of an adjustment to FMV for inventory carrying costs; (4) failure to verify SKF France, S.A.'s

("SKF"') cost response; (5) treatment of SKF's home market discounts; and (6) treatment of SKF"s home market billing adjustments. *Memorandum in Support of Plaintiff The Torrington Company's Motion for Judgment on the Agency Record ("Torrington's Memorandum")* at 7–43.

## Discussion

This Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

■ A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. Circumstance of Sale Adjustment to FMV for Value Added Tax

Torrington challenges the ITA's use of a methodology for adjusting USP and FMV for France's VAT that granted a COS adjustment to FMV to achieve tax neutrality. *Torrington's Memorandum* at 21–24.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Memorandum")* at 17–44.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co. v. United States*, 17 CIT ——, ——, 818 F.Supp. 1563, 1567–69 (1993).

SKF agrees with the defendant's arguments on this issue. *Opposition of SKF USA Inc. and SKF France, S.A. to Torrington's Motion for Judgment on the Agency Record ("SKF's Opposition")* at 13–16.

This Court has fully addressed these arguments and adheres to its decision on this issue in *Federal–Mogul Corp. v. United States*, 17 CIT ——, ——, 813 F.Supp. 856, 863–65 (1993). This Court remands this issue to the ITA to allow the ITA to add the full amount of VAT paid on home market sales to FMV without adjustment.

### 2. Calculation of Cash Deposit Rates

In this administrative review, the ITA used two different methodologies for the actual calculation of dumping margins in cases where ESP sales were used: one for assessing duties on entries covered by the review, and the other for setting the cash deposit rate on future entries of the subject merchandise. *Final Results*, 56 Fed.Reg. at 31,750–51; *Issues Appendix*, 56 Fed.Reg. at 31,698–702. To calculate the assessment rate for ESP sales, the ITA "divide[d] the total PUDD [potential uncollected dumping duties—calculated as the total difference between foreign market value and U.S. price for an exporter] for the reviewed sales by the *total entered value* of those reviewed sales...." *Issues Appendix*, 56 Fed.Reg. at 31,698–99 (emphasis added). To calculate the estimated cash deposit rate for ESP sales, the ITA "divided the total PUDD for each exporter by the *total net U.S. price* for that exporter's sales...." *Id.* at 31,699 (emphasis added).

Torrington argues that the ITA's use of a methodology which results in an estimated cash deposit rate different from the assessment duty rate was unsupported by substantial evidence on the record and not in accordance with law. *Torrington's Memorandum* at 38–43.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum* at 53–60. In addition, defendant argues that this issue is moot because of the publication of superseding cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 28,360 (1992). *Defendant's Memorandum* at 50–53.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at ——, 818 F.Supp. at 1569.

SKF agrees with the defendant's arguments on this issue. *SKF's Opposition* at 21–25.

The Court agrees with the defendant that this issue is now moot. However, the Court directs the defendant to this Court's decision on this issue in *Federal–Mogul,* 17 CIT at ——, 813 F.Supp. at 866–68.

### 3. *Inventory Carrying Costs*

In the Final Results of this administrative review the ITA correctly adjusted ESP for imputed inventory carrying costs pursuant to 19 U.S.C. § 1677a(e)(2) (1988). Torrington does not challenge this adjustment.

Pursuant to its new administrative practice, the ITA also made a corresponding adjustment to FMV for imputed inventory carrying costs when comparing ESP sales to FMV sales.

Torrington objects to this adjustment by the ITA to FMV for imputed inventory carrying costs. *Torrington's Memorandum* at 14–20.

For a detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.,* 17 CIT at ——, 818 F.Supp. at 1574–77.

SKF agrees with the defendant's arguments on this issue. *SKF's Opposition* at 9–12.

This Court adheres to its decision on this issue in *Torrington Co.,* 17 CIT at ——, 818 F.Supp. at 1576–77, and finds that the ITA's adjustment to FMV for imputed inventory carrying costs pursuant to 19 C.F.R. § 353.-56(b)(2) (1991) was a reasonable exercise of the ITA's discretion in implementing the antidumping duty statute and is affirmed.

### 4. *Failure to Verify SKF's Cost Response*

On October 5, 1990, Torrington requested the ITA to conduct verification of all responses submitted in this administrative review, including SKF's cost response, pursuant to 19 U.S.C. § 1677e(b) (1988) and 19 C.F.R. § 353.36 (1991).[1] Administrative Record France Public Document No. ("AR Fra. Pub.Doc.No.") 118. SKF had not yet submitted its cost response to the ITA. AR Fra.Pub.Doc. No. 124. .

After SKF submitted its cost response, Torrington renewed its request for verification alleging that SKF's cost response was missing important information and that some of the information reported was inconsistent. AR Fra.Pub.Doc. Nos. 149, 164, 186, 205.

After the outbreak of the Persian Gulf War, the ITA decided to cancel verification of certain respondent's information. In a letter dated January 25, 1991, Torrington refers to

---

1. 19 U.S.C. § 1677e(b) states in pertinent part:
 (b) Verification
 The administering authority shall verify all information relied upon in making—

 . . . . .

 (3) a review and determination under section 1675(a) of this title, if—
 (A) verification is timely requested by an interested party ..., and
 (B) no verification was made under this paragraph during the 2 immediately preceding reviews and determinations under that section of the same order, finding, or notice, *except that this clause shall not apply if good cause for verification is shown.*
 (Emphasis added).
 Since this was the first review of the outstanding antidumping duty order regarding antifriction bearings from France, the ITA was only required to conduct verification if timely requested by an interested party and only if good cause for verification was shown.

The relevant section of the ITA's regulations state:
**§ 353.36 Verification of information.**
 (a) *In general.* (1) The Secretary will verify all factual information the Secretary relies on in:

 . . . . .

 (iv) The final results of an administrative review under § 353.22(c) or (f) if the Secretary decides that good cause for verification exist; and
 (v) The final results of an administrative review under § 353.22(c) if:
 (A) An interested party ... not later than 120 days after the date of publication of the notice of initiation of review, submits a written request for verification; and
 (B) The Secretary conducted no verification under this paragraph during either of the two immediately preceding administrative reviews.
19 C.F.R. § 353.36.

the ITA's decision not to verify SKF's cost response and goes on to request the ITA to reschedule the verifications it was canceling or for the ITA to conduct limited verification in Washington, D.C. AR Fra.Pub.Doc. No. 186. The ITA refused Torrington's request.

Torrington argues that 19 U.S.C. § 1677e(b)(3)(B) requires the ITA to verify all information used in an administrative review "if good cause for verification is shown." Torrington cites to the House of Representatives Ways and Means Committee's report on the Trade Remedies Reform Act of 1984, which was later incorporated into the Trade and Tariff Act of 1984, for a definition of "good cause." The Report states that "[g]ood cause could be such factors as a significant issue of law or fact, changed or special circumstances, discrepancies found in previous verifications, or the likelihood of a significant impact on the result." H.R.Rep. No. 725, 98th Cong., 2d Sess. 43 (1984), U.S.Code Cong. & Admin. News 1984, pp. 4910, 5170. Torrington argues that anytime these or comparable circumstances are shown to exist, verification is required. *Torrington's Memorandum* at 9–11.

Torrington argues that the analysis of SKF's cost response that it presented to the ITA showed that discrepancies in the response proved that good cause existed for verification of SKF's cost response. *Id.* at 7–8, 11–12. Torrington argues that at a minimum the ITA should have conducted a modified form of verification of SKF's cost response in Washington, D.C. *Id.* at 12–13.

Torrington also points out that verification of SKF's cost response in the original less-than-fair-value investigation turned up discrepancies which the ITA required SKF to remedy. *Id.* at 11–12.

Defendant argues that Torrington waived its request for verification by not specifically raising the issue of the ITA's failure to verify SKF's cost response in its case or rebuttal briefs before the administrative agency. As a result, the ITA was unaware that this was an issue which Torrington continued to pursue and did not specifically address it in the Final Results. *Defendant's Memorandum* at 3–4 n. 4.

Defendant also argues that Torrington failed to show that good cause for verification of SKF's cost response existed. Defendant argues that the ITA correctly requires more than mere speculation by a party requesting verification in order for the ITA to find that good cause for verification exists. Defendant argues that the ITA will not find good cause to verify if a request to verify is made prior to the submission of the data to be verified. Defendant also argues that the ITA will not find good cause to verify if the ITA finds that a respondent has addressed any perceived deficiencies in its responses and the party requesting verification has not shown that any remaining deficiencies will have an impact on dumping margins. *Defendant's Memorandum* at 5–6.

Specifically, defendant argues that the ITA evaluated SKF's cost response, deficiency responses and its other responses and found the information submitted to be credible. Therefore, the ITA determined that there was no need to verify SKF's cost response. *Id.* at 7–8.

Defendant also points out that Torrington failed to substantiate that any remaining problems with SKF's cost response would have a significant effect on SKF's dumping margin. *Id.* at 8.

Finally, defendant points out that the ITA did consider conducting limited verifications in Washington, D.C., but rejected the idea for logistical and procedural reasons. Defendant states that the largest problem with verifications in Washington was that the ITA could not rely on the veracity of documents submitted under such a procedure. *Id.* at 9–10.

SKF agrees with the defendant's arguments on this issue. *SKF's Opposition* at 5–9.

■ As an initial matter, this Court finds that Torrington did not waive its request for verification because it did discuss the failure to verify in its general issues case brief. Administrative Record General Issues Document No. 146. In addition, there is no support for Torrington's contention that the ITA should have conducted limited verification in Washington, D.C.

After examining the administrative record, this Court finds that the ITA sent SKF a deficiency letter requesting SKF to supplement its cost response to deal with many of the problems identified by Torrington. AR Fra.Pub.Doc. No. 142. SKF provided all the information requested by the ITA. AR Fra. Pub.Doc. No. 159. ITA deemed SKF's cost response and supplemental submissions adequate and used SKF's cost data for the Final Results.

Torrington argues that if good cause, defined "as a significant issue of law or fact, changed or special circumstances, discrepancies found in previous verifications, or the likelihood of a significant impact on the result" or comparable circumstances, exist, the ITA is *required* to conduct verification. *See Torrington's Memorandum* at 9 (*quoting* H.R.Rep. No. 725, 98th Cong., 2d Sess. 43, U.S.Code Cong. & Admin.News 1984, p. 5170). The above quotation represents examples of what Congress thought *could* be considered good cause. Nothing leads this Court to the conclusion that the presence of any one of these circumstances requires the ITA to conduct verification.

Torrington argues that there were significant issues of fact in dispute in regard to SKF's cost response and that there had been significant problems with verification in the less than fair value investigation. However, the ITA was aware of these issues and specifically dealt with, and resolved them, to its satisfaction. AR Fra.Pub.Doc. Nos. 142, 159.

■ However, this Court believes the ITA goes too far in arguing that a party requesting verification for good cause must be able to substantiate the degree of impact alleged problems will have on the respondent's dumping margin. All that is required is that the party requesting verification present a reasonable argument that there will be a significant impact. This does not mean that the party must exactly quantify the impact on the dumping margin.[2]

■ But even a showing of a potentially significant impact on dumping margins is not enough. The statute and regulations clearly leave to the ITA's discretion the determination of whether good cause for verification exists. 19 U.S.C. § 1677e(b); 19 C.F.R. § 353.36(a)(iv). If the ITA is satisfied with a respondent's data and determines that good cause to verify does not exist, and the ITA's determination is supported by substantial evidence on the administrative record, this Court will uphold the ITA's determination. 19 U.S.C. § 1516a(b)(1)(B).

As discussed above, the ITA closely examined SKF's cost response, requested additional information, and decided that good cause for verification did not exist. This Court finds that in this case, the ITA's determination was supported by substantial evidence on the administrative record and is affirmed.

## 5. *SKF's Home Market Discounts*

In the Final Results of this administrative review, the ITA stated that in regard to discounts:

> The Department generally allows adjustments to home market price and USP for discounts and rebates where respondents have granted and paid them on sales of subject merchandise to unrelated parties during the period of review. Such discounts or rebates should be part of a respondent's standard business practice and not intended to avoid potential antidumping duty liability. The Department generally makes an adjustment if discounts and rebates, granted pursuant to accurately and adequately described programs, are properly reported on a sale or customer-specific basis and are directly associated with the products or sales under consideration.
>
> . . . .
>
> SKF: SKF granted rebates on a customer-specific basis. The Department verified that rebates per customer were accrued for sales which occurred during an agreed-upon time period or up to a certain agreed-upon amount, and then paid to the

---

**2.** In certain cases a significant impact could be 0.01% if it means the difference between assess- ment of duties and having a *de minimis* margin.

customer. We traced from payments of rebates to documentation justifying why the payments were made. SKF demonstrated that its rebates were legitimate and based on agreements. For the purpose of allocating rebates for this review, SKF divided the total rebates given to each customer during a given time period by the total sales to that customer. We found the allocation of discounts and rebates by SKF–FRG, SKF–France, and SKF–Italy to be consistent and reasonable; therefore, we have not changed our calculations from the preliminary determination.

*Issues Appendix,* 56 Fed.Reg. at 31,717–18.

Torrington argues that discounts relate directly to price and therefore an adjustment to FMV, as the ITA made here, should not be allowed unless SKF demonstrates a direct relationship between a specific discount and a specific sale. Torrington alleges that SKF allocated discounts over all sales without showing that each individual sale was subject to a discount. Torrington argues that allocation is allowed only when a respondent shows on the record that all sales of the subject merchandise were eligible for, and received, a discount. *Torrington's Memorandum* at 32–37.

Defendant concedes that it incorrectly treated SKF's home market discounts as directly related expenses to be deducted from FMV. Defendant states that this Court's decision in *Koyo Seiko Co. v. United States,* 16 CIT ——, ——, 796 F.Supp. 1526, 1529–30 (1992), requires that direct selling expenses be shown to have a reasonably direct relationship to the sales under consideration. Defendant alleges that this direct relationship was not demonstrated if discounts were incurred on a transaction-specific basis but were allocated over all sales on a customer-specific basis as SKF did here. Therefore, defendant requests this Court to remand this issue to the ITA "for reconsideration of those home market cash discounts that were not reported on a transaction-specific or model-specific basis and recalculation of foreign market values where warranted...." *Defendant's Memorandum* at 50.

SKF admits that it allocated all home market discounts for SKF France, S.A. over all home market sales due to the manner in which SKF France, S.A.'s records were kept. *SKF's Opposition* at 21.

SKF argues that it was reasonable for the ITA to accept SKF's method of reporting discounts and requests this Court to sustain the ITA's actions in regard to this issue.

In addition, SKF argues that it has been caught by surprise by the defendant's change of position on this issue. SKF argues that there is no statutory basis for the defendant to change its position in regard to its final administrative determination after judicial review of that determination has commenced. *Reply Brief of SKF USA Inc. and SKF France, S.A. ("SKF's Reply")* at 3–4. SKF argues that the ITA's unilateral decision to reverse its position in regard to SKF's discounts denied SKF due process by not allowing SKF the opportunity to comment on the ITA's new position and possibly correct problems with its information submission. *Id.* at 4–6.

SKF argues that the ITA's articulation of a new standard in regard to granting adjustments for discounts which will be given retroactive effect was unfair and unlawful. SKF points out that retroactive application of the law is frowned upon, citing *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). *SKF's Reply* at 7–10.

SKF also argues that it has relied on the ITA's previous position on this issue in its efforts to try to eliminate dumping by the company. The change in the ITA's position may result in the creation of dumping margins during the second, third and part of the fourth administrative reviews which would not have existed under the ITA's old methodology. *SKF's Reply* at 10–15.

SKF argues that *Koyo Seiko,* 16 CIT at ——, 796 F.Supp. at 1529–30, does not invalidate the reporting methodology used by SKF for discounts. *SKF's Reply* at 15–17.

SKF argues that the ITA's new transaction-specific standard should be rejected. *Id.* at 19–20. However, if this Court finds the ITA's new standard to be reasonable and in

accordance with law, SKF requests the Court to determine that SKF has met the new standard. *Id.* at 21–22. At a minimum, SKF requests this Court to direct the ITA to allow an indirect adjustment to FMV for SKF's discounts. *Id.* at 23–24.

Torrington argues that it is well settled that the ITA may request a remand to correct errors in its application of the law as well as other types of clerical errors. *Surreply of The Torrington Company to the Reply Brief of the SKF Companies.*

■ As an initial matter, this Court finds that SKF's argument that the defendant is precluded from requesting a remand when it believes that it has incorrectly applied the law is completely without foundation. As this court has stated:

> The law is clear that remand is appropriate where an agency has followed an improper method in making a determination or where there has been a defect in the agency's finding. *See, e.g., Ford Motor Co. v. NLRB,* 305 U.S. 364, 374–75 [59 S.Ct. 301, 307, 83 L.Ed. 221] (1939); *Greene County Planning Bd. v. Federal Power Comm'n,* 559 F.2d 1227 (2d Cir.1977) (en banc), *cert. denied,* 434 U.S. 1086 [98 S.Ct. 1280, 55 L.Ed.2d 791] (1978).

*Timken Co. v. United States,* 7 CIT 319, 320, 1984 WL 3725 (1984).

■ As to the merits of this issue, the Court of Appeals for the Federal Circuit has stated that in order for a discount or rebate to qualify as a direct cost to be subtracted from FMV, the discount or rebate must have been actually paid on all of the sales under consideration and allocated on the basis of actual cost and sales figures. *Smith–Corona Group v. United States,* 713 F.2d 1568, 1580 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). In *Koyo Seiko,* 16 CIT at ——, 796 F.Supp. at 1530, this Court upheld the ITA's treatment of Koyo Seiko Co., Ltd.'s ("Koyo Seiko") post sale price adjustments as indirect selling expenses because these post sale price adjustments could not be directly correlated with sales of the subject merchandise using verified cost and sales information. In addition, this Court has found that rebates paid on out of scope merchandise may not be used in the calculation of deductions for expenses from FMV for in-scope merchandise. *Torrington Co.,* 17 CIT at ——, 818 F.Supp. at 1578–79.

The statute and the ITA have a preference for respondents to provide actual expense information as opposed to allocated expense information. As a result, the ITA generally gives respondents an incentive to provide the ITA with actual expense information. The ITA does this by classifying actual expense information in a way which gives greater benefit to the respondent and classifying allocated information in a way which gives a respondent less benefit. This can lead to differing treatment of the same kind of expenses in the calculation of USP and FMV.

A respondent benefits by having home market expenses characterized as direct because generally FMV will be adjusted only for direct expenses. 19 U.S.C. § 1677b(a)(4)(B) (1988); *Consumer Prods. Div., SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1037–38 (Fed.Cir.1985). If the respondent fails to meet the standard for receiving a direct adjustment to price for its home market expenses, the expense will be treated as an indirect expense because this treatment is adverse to the respondent. 19 C.F.R. § 353.56(b)(2) (indirect selling expenses deducted from FMV only in relation to ESP transactions and only up to amount of indirect selling expenses deducted from USP). Allocated expenses in the U.S. market are treated as direct expenses because direct expenses will be deducted from all USP transactions which will, therefore, reduce USP and potentially increase dumping margins. 19 U.S.C. § 1677a(d)(2)(A) (1988). If these expenses were treated as indirect expenses, they would only be deducted from USP in regard to ESP transactions and will, therefore, reduce USP and potentially increase the dumping margin only for ESP transactions. 19 U.S.C. § 1677a(e)(2) (1988). Therefore, treatment of these expenses as indirect expenses would destroy any incentive a respondent has to provide the ITA with actual expense information. This court has affirmed this method of providing an incentive for respondents to provide actual expense information. *Timken Co. v. United*

*States,* 11 CIT 786, 804, 673 F.Supp. 495, 512–13 (1987).

It is clear that discounts can be deducted from FMV if the actual expense information is reported to the ITA on a transaction-specific or product-specific basis. 19 U.S.C. § 1677b(a)(4)(B). It is also clear that discounts paid on the subject merchandise can be allocated over all sales of the subject merchandise as long as discounts paid only on the subject merchandise are used to calculate the per-unit amount of discount to be deducted and the discounts "can be directly correlated with specific merchandise using verified cost and sales information." *Smith–Corona,* 713 F.2d at 1580. If a respondent is unable to provide the ITA with transaction-specific or product-specific discount amounts, the ITA must look to the information provided by the respondent to determine if the reported allocated discounts were only made on and allocated to sales of the subject merchandise and can be tied to verified cost and sales data. In order for the ITA to accept discounts or rebates allocated on a customer-specific basis as direct costs, the percentage amount of each discount or rebate paid must be the same for each type of the subject merchandise sold and the total amount of discounts or rebates paid to each customer must be allocated over all sales of the subject merchandise made to that customer. If this relationship is not shown to the satisfaction of the ITA, but the aggregate amounts of discounts paid on the subject merchandise have been verified, the discounts are to be treated as indirect selling expenses. *Koyo Seiko,* 16 CIT at ——, 796 F.Supp. at 1530.

Therefore, this Court remands this issue to the ITA to determine if SKF's method of reporting discounts in the home market meets the standard required for those discounts to be treated as direct selling expenses and subtracted from FMV. If the information on the administrative record does not support treatment of these discounts as direct expenses, the ITA will treat these discounts as indirect selling expenses since the ITA has already verified the total amounts in question. AR Fra.Pub.Doc. No. 192. In addition, this Court cannot tell on the basis of the administrative record if discounts paid on SKF's sales of out of scope merchandise were used in the calculation of the adjustment to FMV for SKF's home market sales discounts. This Court cannot allow the ITA to use a methodology which allows for the inclusion of discounts paid on out of scope merchandise in calculating adjustments to FMV and ultimately the dumping margins. *Torrington Co.,* 17 CIT at ——, 818 F.Supp. at 1579. Therefore, upon remand the ITA is directed to develop a methodology which removes discounts paid on sales of out of scope merchandise from any adjustments made to FMV for discounts or, if no viable method can be developed, to deny such an adjustment in its calculation of FMV.

6. *Treatment of SKF's Home Market Billing Adjustments*

 For SKF France, S.A., SKF reported all billing adjustments which were greater than 5% of gross unit price and more than 100 French francs. For all other SKF subsidiaries in France, SKF reported all adjustments made to invoice price that were greater than 5% of gross unit price. AR Fra. Pub.Doc. No. 114. For billing adjustments which were below this threshold, SKF reported the aggregate amount of adjustments and allocated them over all sales of the subject merchandise as indirect selling expenses. *Id.* ITA accepted SKF's reporting and allocation methodology for billing adjustments. *Issues Appendix,* 56 Fed.Reg. at 31,726.

Torrington argues that the ITA erred by granting SKF an indirect adjustment to FMV for billing adjustments which were reported in aggregate amounts and allocated over all sales. Specifically, Torrington argues that the ITA abdicated its responsibility to obtain all information necessary to correctly calculate FMV by allowing SKF to control the data submitted by deciding what information in what form it would submit to the ITA regarding billing adjustments. *Torrington's Memorandum* at 25–28.

Torrington relies on *Timken Co. v. United States,* 10 CIT 86, 94–100, 630 F.Supp. 1327, 1336–40 (1986), where the respondent was allowed to submit sales data only in regard to models of merchandise sold in the home mar-

ket which it determined were similar to the merchandise sold in the U.S. market subject to the antidumping duty order. This court remanded the case to the ITA to collect all information necessary to allow the agency to determine for itself what the most similar merchandise was and to require the respondent to then submit sales information in regard to those models. *Id.; Torrington's Memorandum* at 27–28.

Torrington argues that the ITA erred by allowing SKF to determine which billing adjustments should be reported on a transaction-specific basis and which adjustments to allocate over all sales. Torrington points out that by allocating billing adjustments to all sales SKF may have been able to reduce or eliminate dumping margins which would otherwise be found by the ITA. As an example, if the adjustment was an increase in price of 4.99%, SKF may not have reported it. However, if the dumping margin resulting from a comparison of this transaction with a U.S. sale was under 5%, the failure to report the actual adjustment could lead to a finding of no dumping. *Id.* at 28–30.

Defendant argues that 19 U.S.C. § 1677f-1(a) (1988) allows the ITA to disregard insignificant circumstance of sale adjustments. Defendant argues that neither the statute nor the regulations define what an insignificant adjustment is.[3] Therefore, defendant argues that the ITA has been granted broad discretion to determine what constitutes insignificant adjustments which can be disregarded. Defendant argues that the billing adjustments which SKF allocated over all sales were insignificant in regard to SKF's total home market sales volume and, therefore, ITA acted in accordance with law in not requiring SKF to report this data. *Defendant's Memorandum* at 45–46.

Defendant argues that the ITA correctly treated billing adjustments which were not reported on a transaction-specific basis as indirect selling expenses. As discussed earlier in this opinion, defendant argues that when transaction-specific home market expenses are not reported on a transaction-specific basis but are allocated over all sales, the ITA is correct to treat these expenses as indirect selling expenses as this treatment grants respondent unfavorable treatment for these expenses. *Id.* at 47–49.

SKF points out that it did report all billing adjustments but that Torrington is contesting the method by which SKF reported these adjustments. SKF argues that the ITA acted well within its discretion in accepting SKF's reporting methodology. SKF also points out that its reporting methodology is as likely to create dumping margins where none may exist as it is to hide them. *SKF's Opposition* at 16–19.

Defendant argues that the statute and the ITA's regulations do not define what constitutes an "insignificant" COS adjustment which can be disregarded pursuant to 19 U.S.C. § 1677f-1(a)(2). *Defendant's Memorandum* at 45–46. However, the Court finds that this is not true. ITA's own regulation defines "insignificant adjustments" stating:

§ 353.59 **Disregarding insignificant adjustments; use of averaging and sampling.**

(a) *Insignificant adjustments.* The Secretary may disregard adjustments to foreign market value which are insignificant. Ordinarily, the Secretary will disregard individual adjustments having an *ad valorem* effect of less than 0.33 percent, or any group of adjustments having an *ad valorem* effect of less than 1.0 percent, of the foreign market value. Groups of adjustments are differences in circumstances of sale, differences in the physical characteristics of the merchandise, and differences in the levels of trade.

19 C.F.R. § 353.59(a) (1991). Defendant argues that 19 C.F.R. § 353.59(a) does not apply to the situation presented by SKF's

---

3. 19 U.S.C. § 1677f-1 states in pertinent part:
 § **1677f-1. Sampling and averaging**
 (a) **In general**
 For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under

section 1675 of this title, the administering authority may—

(2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.

allocation of certain billing adjustments to all home market sales. *Defendant's Memorandum* at 45–46.

This Court cannot understand why the ITA would believe that 19 C.F.R. § 353.59(a) does not apply to this situation. It is clear that this regulation applies when the ITA is making a determination as to whether any adjustment to FMV is insignificant and can, therefore, be disregarded in the calculation of FMV. According to defendant, "[t]he billing adjustments not reported by SKF for two of its subsidiaries were considered by Commerce to be insignificant." *Defendant's Memorandum* at 46. However, the ITA did not apply its own regulation to make this determination.

According to 19 C.F.R. § 353.59(a), any single adjustment which would have an *ad valorem* effect of over 0.33% on FMV will not be disregarded by the ITA in its calculation of FMV. Therefore, in this case, the ITA was required to determine if SKF's billing adjustments which it allocated over all sales would have reached this threshold based on information in the administrative record. If the ITA determined that the billing adjustments SKF reported in aggregate and allocated over all sales may have reached this threshold, then the ITA was required to obtain specific information on these billing adjustments and factor these adjustments into its calculation of FMV.

As a general matter, this Court agrees with defendant that transaction-specific adjustments to FMV reported as a verified aggregate amount and allocated over all sales can be treated as indirect selling expenses. However, given the facts of this case, the Court does not believe that SKF has met its burden of showing that it deserves an indirect adjustment.

SKF took upon itself the authority to determine a cutoff point at which it would no longer report transaction-specific billing adjustments. For transactions which had billing adjustments which were above this threshold, SKF did report all billing adjustments on a transaction-specific basis. Therefore, it is clear that SKF could have reported all billing adjustments on a transaction-specific basis had it chosen to do so.

ITA decided to accept SKF's reporting methodology because it found SKF's aggregate billing adjustments to be insignificant. Evidence on the administrative record suggests that the allocated billing adjustments may not in fact be insignificant pursuant to 19 C.F.R. § 353.59(a). AR Fra. Confidential Doc. No. 35. The ITA does not have authority to ignore significant adjustments to FMV. Neither can the ITA abdicate its responsibility to determine what information a respondent must report in order to receive adjustments to FMV. *Timken,* 10 CIT at 94–100, 630 F.Supp. at 1336–40.

Therefore, this issue is remanded for the ITA to apply 19 C.F.R. § 353.59(a) to determine whether SKF's reported billing adjustments which it classified as *de minimis* and allocated over all sales were insignificant. If the ITA determines from information on the administrative record that these adjustments were not insignificant, the ITA is directed to deny SKF an adjustment for those billing adjustments as a respondent cannot be allowed to determine what information it will provide to the ITA as proof of significant adjustments to FMV.

*Conclusion*

In accordance with the foregoing opinion, this case is remanded to the ITA to add the full amount of VAT paid on each sale in the home market to FMV without adjustment; to determine if SKF's method of reporting discounts in the home market meets the standard required for those discounts to be treated as direct selling expenses and subtracted from FMV or if information on the administrative record does not support deduction as direct expenses, to treat these discounts as indirect selling expenses; to develop a methodology which removes discounts paid on sales of out of scope merchandise from any adjustments made to FMV for SKF's discounts or, if no viable method can be developed, to deny such an adjustment in its calculation of FMV; and to apply 19 C.F.R. § 353.59(a) to determine whether SKF's reported billing adjustments which it classified as *de minimis* and allocated over all sales were insignificant. If the ITA de-

termines from information on the administrative record that these adjustments were not insignificant, the ITA is directed to deny SKF an adjustment for those allocated billing adjustments. ITA's determination is affirmed in all other respects. Remand results are due within sixty (60) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

#### ORDER

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

ORDERED that this case is remanded to the ITA to add the full amount of VAT paid on each sale in the home market to FMV without adjustment; to determine if SKF's method of reporting discounts in the home market meets the standard required for those discounts to be treated as direct selling expenses and subtracted from FMV or if information on the administrative record does not support deduction as direct expenses, to treat these discounts as indirect selling expenses; to develop a methodology which removes discounts paid on sales of out of scope merchandise from any adjustments made to FMV for SKF's discounts or, if no viable method can be developed, to deny such an adjustment in its calculation of FMV; and to apply 19 C.F.R. § 353.59(a) to determine whether SKF's reported billing adjustments which it allocated over all sales were insignificant and if the ITA determines from information on the administrative record that these adjustments were not insignificant, the ITA is directed to deny SKF an adjustment for those allocated billing adjustments; and it is further

ORDERED that the ITA's determination is affirmed in all other respects; and it is further

ORDERED that remand results are due within sixty (60) days of the date this opinion is entered, comments or responses by the parties to the remand results are due within

thirty (30) days thereafter and any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.