FEDERAL-MOGUL CORP, PLAINTIFF AND PLAINTIFF-INTERVENOR, AND TORRINGTON CO., PLAINTIFF AND PLAINTIFF-INTERVENOR *v.* UNITED STATES, DEFENDANT, AND NTN BEARING CORP. OF AMERICA, AMERICAN NTN BEARING MANUFACTURING CORP, NTN CORP, KOYO SEIKO CO., LTD., KOYO CORP. OF U.S.A., PEER BEARING CO., NSK LTD., NSK CORP, CATERPILLAR INC., MINEBEA CO., LTD., AND NMB CORP, DEFENDANT-INTERVENORS

Consolidated Court No. 91–07–00530

(Dated September 14, 1993)

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V* and *Larry Hampel)* for plaintiff and plaintiff-intervenor Federal-Mogul Corporation.

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Christopher J. Callahan, John M. Breen, Geert De Prest, Margaret E.O. Edozien, Lane S. Hurewitz, Patrick J. McDonough, Robert A. Weaver* and *Amy S. Dwyer)* for plaintiff and plaintiff-intervenor The Torrington Company.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Velta A. Melnbrencis* and *Jane E. Meehan);* of counsel: *John D. McInerney,* Acting Deputy Chief Counsel for Import Administration, *Dean A. Pinkert, Stephen J. Claeys* and *Craig R. Giesze,* Attorney-Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Powell, Goldstein, Frazer & Murphy (Peter O. Suchman, Neil R. Ellis, Susan E. Silver, T. George Davis* and *Niall P. Meagher)* for defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.

*Barnes, Richardson & Colburn (Robert E. Burke, Donald J. Unger, Kazumune V. Kano* and *Diane A. MacDonald)* for defendant-intervenors NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation.

*Coudert Brothers (Robert A. Lipstein, Matthew P. Jaffe* and *Nathan V. Holt)* for defendant-intervenors NSK Ltd. and NSK Corporation.

*Venable, Baetjer, Howard & Civiletti (John M. Gurley, John C. Dibble* and *Lindsay B. Meyer)* for defendant-intervenor Peer Bearing Company.

*Powell, Goldstein, Frazer & Murphy (Richard M. Belanger, Neil R. Ellis* and *D. Christine Wood)* for defendant-intervenor Caterpillar, Inc.

*Tanaka Ritger & Middleton (H. William Tanaka, Michele N. Tanaka* and *Michael J. Brown)* for defendant-intervenor Minebea Co., Ltd. and NMB Corporation.

## OPINION

TSOUCALAS, *Judge:* Plaintiff, The Torrington Company ("Torrington"), commenced this action to challenge certain aspects of the Depart-

ment of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings ("AFBs") from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 56 Fed. Reg. 31,754 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany: Final Results of Antidumping Duty Administrative Review ("Issues Appendix")*, 56 Fed. Reg. 31,692 (1991).

Torrington has now filed its second motion for partial judgment on the agency record pursuant to Rule 56.1 of the Rules of this Court alleging that the following actions by the ITA were unsupported by substantial evidence on the administrative record and not in accordance with law: (1) adjustment to foreign market value ("FMV") for pre-sale inland freight; and (2) the ITA's conclusion that there were no indications that respondents knew or should have known that antifriction bearings sold to Japanese original equipment manufacturers ("OEMs") with affiliates in the United States were destined for consumption in the United States. *Plaintiff's Memorandum in Support of its Motion for Partial Judgment on the Agency Record ("Torrington's Memorandum")* at 6–19.

## BACKGROUND

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings, cylindrical roller bearings, spherical plain bearings and parts thereof from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews*, 55 Fed. Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Antidumping Duty Administrative Reviews*, 56 Fed. Reg. 11,186 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results*, 56 Fed. Reg. 31,754.

## DISCUSSION

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evi-

dence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F. Supp. 1252, 1255 (1988).

### 1. *Adjustment to FMV for Pre-sale Inland Freight:*

In the Final Results, the ITA deducted all pre-sale movement expenses from its calculation of FMV stating:

> [W]e have determined that pre-sale inland freight should be treated as a movement expense and deducted from foreign market value. Because we do not treat pre-sale and post-sale movement charges differently in calculating an ex-factory U.S. price, we must treat these expenses in a similar manner in the home market, to ensure an equitable price-to-price comparison.

*Issue Appendix,* 56 Fed. Reg. at 31,715.

Torrington argues that the ITA's decision to deduct all pre-sale movement expenses from FMV is contrary to past ITA practice and the decision of this court in *Silver Reed America, Inc. v. United States,* 7 CIT 23, 34–35, 581 F. Supp. 1290, 1298–99 (1984), *rev'd on other grounds sub nom. Consumer Prods. Div., SMC Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033 (Fed. Cir. 1985). *Torrington's Memorandum* at 7–9. Torrington argues that the ITA is making this adjustment pursuant to its authority to adjust FMV for differences in circumstances of sales. *See* 19 U.S.C. § 1677b(a)(4)(B) (1988), 19 C.F.R. § 353.56(a) (1991).

Specifically, Torrington argues that in order for the ITA to make an adjustment to FMV for a difference in circumstance of sale, the expense at issue must be directly related to the sales being investigated. Torrington points out that the court in *Silver Reed,* 7 CIT at 34–35, 581 F. Supp. at 1298–99, upheld ITA's past practice of denying an adjustment to FMV for pre-sale expenses which could not be directly tied to sales. *Torrington's Memorandum* at 8–9. Torrington argues that *Silver Reed* is directly on point because here respondents were unable to tie their pre-sale movement charges directly to the sales under investigation. *Id.* at 9.

Torrington admits that this court recently upheld the ITA's new practice of deducting all pre-sale movement expenses from FMV in *Ad Hoc Comm. of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States,* 16 CIT 115, 117–19, 787 F. Supp. 208, 211–13 (1992), but argues that this case was wrongly decided. *Torrington's Memorandum* at 11–13.

Defendant, NSK and NTN rely on this court's decision in *Ad Hoc Comm.,* 16 CIT at 117–19, 787 F. Supp. at 211–13. *Defendant's Memorandum in Opposition to the Motion of The Torrington Company for Partial Judgment on the Agency Record ("Defendant's Memorandum")* at 3–4; *Memorandum of Points and Authorities in Opposition to Motion for Partial Judgment on the Agency Record ("NSK's Memorandum")* at

10–11; *Defendant-Intervenor NTN's Opposition to Plaintiff's Motion for Partial Judgment on the Agency Record ("NTN's Opposition)* at 3–6.

The ITA's decision to compare U.S. price to home market price at a contemporaneous point in the chain of commerce is reasonable. *Torrington Co. v. United States,* 17 CIT 199, 215, 818 F. Supp. 1563, 1576 (1993). In this case, the ITA has chosen an ex-factory price as the contemporaneous point in the chain of commerce. In order to make this comparison, certain expenses need to be removed from both U.S. and home market prices. This Court finds nothing unreasonable in the ITA's removal of pre-sale movement expenses from both U.S. and home market prices as measured from the same point in the chain of commerce, in this case ex-factory. *Id.; Ad Hoc Comm.*, 16 CIT at 117–19, 787 F. Supp. at 211–13. This method of treating pre-sale home market movement expenses has also been specifically upheld by this court in a well reasoned opinion in *Nihon Cement Co. v. United States,* 17 CIT 400, 414–17, Slip Op. 93–80 at 30–34 (May 25, 1993).

Therefore, this Court affirms the ITA's deduction of pre-sale movement expenses from FMV.

## 2. *Sales to Original Equipment Manufacturers:*

During this administrative review, Torrington alleged that respondents had information which allowed them to determine whether AFBs sold to Japanese OEMs with affiliates in the U.S. were destined for the U.S. market. Torrington argued that if respondents were able to make this determination, such sales should not have been included in the calculation of FMV.

In regard to this issue, the ITA stated in its Final Results:

> Our review of the record revealed that, in certain cases, sales were made to home market OEM customers that were affiliates of U.S. companies. However, this is normal when dealing with a global industry such as AFBs and with multinational firms. In such cases, it is reasonable for a manufacturer to believe that its sales to an OEM customer in the home market would, with certain exceptions, be consumed in that market. This is particularly true if the OEM customer has significant sales in the home market, or has not applied for a refund of indirect taxes that are rebated or not collected upon exportation of the merchandise. The exceptions would include situations in which the manufacturer was informed in advance or had reason to know the ultimate destination based on such factors as market-specific product specifications, shipping or marking instructions. In these reviews, we did not delete home market sales to OEMs with U.S. affiliates because there was no indications that the manufacturer knew, or should have known, that these sales were for other than home market consumption.

*Issues Appendix,* 56 Fed. Reg. at 31,741.

Torrington renews its argument that evidence on the administrative record indicates that respondents had the information necessary for them to determine whether certain sales of AFBs in the home market to

OEMs with U.S. affiliates were destined for the U.S. market. Torrington argues that the administrative record shows that AFBs destined for export would have a JBIA inspection certificate prepared by the manufacturer for the Japanese Bearing Institute which would list the destination of the exports, that Torrington presented the ITA with lists of Japanese OEMs with U.S. affiliates and the location of their warehouses, and that the verification report for Asahi Seiko Co., Ltd. ("Asahi") indicated that Asahi was able to distinguish sales of AFBs destined for the U.S. market for at least one of Asahi's Japanese customers. Administrative Record Japan Public Document Numbers ("AR Japan Pub. Doc. Nos.") 262, 655, 664; *Torrington's Memorandum* at 14–15.

Torrington argues that the ITA abused its discretion by failing to further investigate Torrington's allegations. Torrington argues that when a petitioner presents evidence on the administrative record which calls into question a respondent's claim of ignorance as to the ultimate destination of AFBs sold in the home market, the ITA is required to fully investigate the issue. *Torrington's Memorandum* at 16–17 *(citing Nakajima All Co. v. United States,* 14 CIT 469, 475–76, 744 F. Supp. 1168, 1173 (1990); *Floral Trade Council of Davis, California v. United States,* 12 CIT 1163, 1165, 704 F. Supp. 233, 236 (1988); *Connors Steel Co. v. United States,* 2 CIT 242, 248, 527 F. Supp. 350, 357 (1981), *modified,* 3 CIT 79, 566 F. Supp. 1521 (1982)).* Torrington argues that in a situation where the respondents allegedly possess the data needed to decide the issue, the ITA is required to place the burden on respondents of negating the evidence presented by Torrington. *Torrington's Memorandum* at 17 *(citing Timken Co. v. United States,* 11 CIT 786, 804–05, 673 F. Supp. 495, 512–13 (1987)).

Defendant argues that the ITA's duties are largely investigatory citing *Floral Trade Council,* 12 CIT at 1165, 704 F. Supp. at 236. Defendant points out that the statute requires the ITA to conduct certain types of investigations. Thus, 19 U.S.C. § 1677b(b) (1988) sets out the conditions under which the ITA is required to conduct a cost of production investigation. However, in the vast majority of cases, the statute is silent as to the type of specific investigation the ITA is required to make and how that investigation is to be conducted. Defendant also argues that the ITA is "presumed to have given appropriate consideration to everything brought to its attention and relevant to the issue." *Defendant's Memorandum* at 11 *(citing Smith Corona Corp. v. United States,* 15 CIT 355, 362, 771 F. Supp. 389, 396 (1991) (citations omitted)).

Defendant points out that the statute does not address how the ITA is to determine if a respondent knew, or should have known, that home market sales of AFBs were actually destined for the U.S. market. Therefore, defendant argues that the ITA is granted broad discretion in making this determination. *Defendant's Memorandum* at 12–13.

Defendant argues that the ITA did examine this issue by looking at various factors which it considered dispositive as to whether the respondents were able to determine if home market sales were destined for the

U.S. market. These factors included market-specific specifications and shipping or marking instructions. *Defendant's Memorandum* at 12–13 *(citing Issues Appendix,* 56 Fed. Reg. at 31,741). Defendant argues that examination of these factors led the ITA to reasonably conclude that respondents were unable to tell which home market sales might end up in the U.S. market. *Id.*

As to Torrington's specific allegations, the ITA argues that because one of Nachi-Fujikoshi Corporation's ("Nachi") suppliers prepared the JBIA inspection certificate is not evidence that all AFB manufacturers prepared such certificates for exported AFBs, that Torrington's provision of lists of warehouses for OEMs with U.S. affiliates was not evidence that AFB manufacturers knew the destination of their products, and the fact that Asahi reported some home market sales which it believed were destined for the U.S. market was not evidence that Asahi, or any other respondent, knew that other home market sales were destined for the U.S. market. *Id.* at 14–15.

Defendant and NSK argue that placing the burden on respondents to prove that they had no knowledge of the destination of AFBs sold in the home market imposes the impossible burden of proving a negative. *Defendant's Memorandum* at 13; *NSK's Memorandum* at 12.

Defendant and NTN point out that *Nakajima, Floral Trade Council* and *Connors Steel Co.* involved the question of whether the ITA was required to conduct a cost of production investigation pursuant to 19 U.S.C. § 1677b(b). However, the determination which the ITA made here is not specifically covered by the statute or regulations and, therefore, these cases do not apply. *Defendant's Memorandum* at 12; *NTN's Opposition* at 8–10.

NTN and NSK also argue that the ITA verified that NTN and NSK's home market sales were correctly reported. AR Japan Pub. Doc. Nos. 661, 724; *NTN's Opposition* at 7–8; *NSK's Memorandum* at 11–13. NTN argues that Torrington has presented no evidence during the underlying administrative proceeding or before this Court that NTN was aware that the final destination of some of its home market sales was the U.S. market. *NTN's Opposition* at 7–8.

ITA is granted broad discretion in the conduct of administrative reviews, especially in those aspects of the review which are not specifically governed by the statute or regulations. Also, the ITA is not required to investigate all allegations made by a petitioner. *Kerr-McGee Chem. Corp. v. United States,* 14 CIT 344, 362, 739 F. Supp. 613, 628 (1990); *Floral Trade Council,* 12 CIT at 1165, 704 F. Supp. at 236.

However, the accurate determination of which sales should be classified as home market sales and used to calculate FMV, and which sales should be classified as U.S. sales and used to calculate United States price, is central to accurately determining antidumping duty margins. 19 U.S.C. §§ 1675(a)(2), 1677a, 1677b(a) (1988). In a situation where the petitioner has provided the ITA with evidence which a reasonable mind would accept as calling into question whether respondents

were able to distinguish home market sales destined for consumption in the home market from home market sales destined for consumption in the U.S. market, the ITA is required to diligently inquire into these allegations.

In this case, the ITA was presented with evidence that at least one Japanese manufacturer was able to determine that some home market sales were destined for consumption in the U.S. market. AR Japan Pub. Doc. No. 655. Many respondents admitted that some of their home market sales would end up in the U.S. market, but argued that they were unable to distinguish these sales. *See, e.g.,* AR Japan Pub. Doc. No. 554. Even more important, information on the administrative record tends to show that Japanese manufacturers may have been required to prepare JBIA inspection certificates prior to export of AFBs. Preparation of such certificates would seem to require knowledge of the ultimate destination of the AFBs. AR Japan Pub. Doc. No. 262. Torrington specifically pointed this out to the ITA and requested that the ITA investigate if this information regarding JBIA inspection certificates was true and, if so, to request copies of any JBIA inspection certificates prepared by the respondents for home market sales. AR Japan Pub. Doc. No. 664.

This Court can find no evidence on the administrative record that the ITA addressed Torrington's specific allegations in regard to JBIA inspection certificates. Given the importance of correctly classifying sales of AFBs as either home market sales or U.S. sales, it would seem that at a minimum the ITA was required to investigate the procedure for preparing JBIA inspection certificates. If the ITA found that AFB manufacturers were required to prepare these certificates and the certificates contained the final destination of the AFBs upon export, the ITA should have requested copies of all JBIA inspection certificates prepared by respondents for home market sales in order to determine if any of these sales were destined for the U.S. market.

Given Torrington's uncontradicted assertion that JBIA inspection certificates contained final export destinations and were prepared by respondents, this Court finds that the ITA's determination that the respondents did not possess information which would allow them to determine whether sales to OEMs with U.S. affiliates were destined for consumption in the U.S. market is not supported by substantial evidence on the administrative record.

Therefore, this Court remands this issue to the ITA to determine if JBIA inspection certificates were prepared by the respondents and if the certificates contained the final destination of any AFBs which were exported. If the ITA finds that JBIA inspection certificates were prepared by respondents and did contain the final destination of any AFB exports, the ITA is instructed to require respondents to provide the ITA with copies of any JBIA inspection certificates prepared by respondents for home market sales to OEMs with U.S. affiliates. ITA will then determine if any respondent had prepared JBIA inspection certificates for home market sales that were destined for export to the Japanese OEMs' U.S.

affiliates. If the ITA discovers that any respondent had knowledge that its home market sales were destined for export to U.S. affiliates of Japanese OEMs, the ITA will disregard these sales in calculating FMV.

## CONCLUSION

This case is remanded to the ITA to allow the ITA to determine if JBIA inspection certificates provided evidence that respondents knew, or should have known, that sales to Japanese OEMs with U.S. affiliates were destined for the U.S. market. If the ITA finds that respondents knew, or should have known, that sales to Japanese OEMs with U.S. affiliates were destined for the U.S. market, the ITA will disregard those sales in calculating FMV. Remand results are due within sixty (60) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.